1   GIBSON, DUNN & CRUTCHER LLP
    GARETH T. EVANS, SBN 138992
2   GEvans@Gibsondunn.com
    ANDREW J. DEMKO, SBN 247320
3   ADemko@Gibsondunn.com
    333 South Grand Avenue
4   Los Angeles, California 90071-3197
    Telephone: (213) 229-7000
5   Facsimile: (213) 229-7520

6   MILBANK, TWEED, HADLEY & McCLOY LLP
    JAMES N. BENEDICT, *Pro Hac Vice*
7   JBenedict@Milbank.com
    SEAN M. MURPHY, *Pro Hac Vice*
8   SMurphy@Milbank.com
    C. NEIL GRAY, *Pro Hac Vice*
9   CNGray@Milbank.com
    One Chase Manhattan Plaza
10  New York, NY 10005-1413
    Telephone: (212) 530-5000
11  Facsimile: (212) 530-5219

12  Attorneys for Defendants
    THE CAPITAL GROUP COMPANIES, INC.,
13  CAPITAL RESEARCH AND MANAGEMENT
    COMPANY and AMERICAN FUNDS
14  DISTRIBUTORS, INC.

15

16                    **UNITED STATES DISTRICT COURT**

17                    **CENTRAL DISTRICT OF CALIFORNIA**

18                         **WESTERN DIVISION**

19  In re AMERICAN FUNDS SECURITIES          MASTER FILE NO.
    LITIGATION
20                                           CV 06-7815 GAF (RNBx)

21
    This document relates to:               **DEFENDANTS' MEMORANDUM IN**
22                                           **FURTHER SUPPORT OF THEIR**
                                             **MOTION TO DISMISS PLAINTIFFS'**
23  ALL ACTIONS                              **CONSOLIDATED AMENDED**
                                             **COMPLAINT**
24
                                             Judge:    Hon. Gary A. Feess
25

26

27

28

Gibson, Dunn &
Crutcher LLP

1

## TABLE OF CONTENTS

2

3   I. PRELIMINARY STATEMENT ............................................................... 1

4   II. PROCEDURAL HISTORY ................................................................ 2

5   III. OVERVIEW OF *MERCK* ............................................................. 5

6   IV. ARGUMENT ................................................................................ 6

7       A.   *MERCK* CONFIRMS THAT THE CAC IS TIME-BARRED ........... 6

8           1.   This Court's Analysis Was Fully Consistent With Merck ....... 6

9           2.   A Reasonably Diligent Investor Would Have Discovered
                 the Facts Giving Rise to the Claims Asserted in the CAC ........ 7
10
            3.   *Corbi* Demonstrates That Plaintiffs Had Constructive
11               Notice of the Claims Asserted in the CAC ............................ 8

12          4.   Numerous Press Articles (Including the Mainstream
                 Media) Disclosed the Alleged Facts Pleaded in the CAC ....... 10
13
        B.   PLAINTIFFS WAIVED THEIR SECURITIES ACT CLAIMS,
14           WHICH ARE TIME-BARRED IN ANY EVENT .............................. 11

15  V. CONCLUSION ............................................................................... 13

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

# **TABLE OF AUTHORITIES**

3

**Page(s)**

4

CASES

5

*Betz v. Trainer Wortham & Co.,*
6
    519 F.3d 863 (9th Cir. 2008) ................................................................3

7

*Betz v. Trainer Wortham & Co.,*
8
    610 F.3d 1169 (9th Cir. 2010) ...........................................................1, 4

9

*Chin v. Capital Group Cos.,*
    No. 08-56034, 2010 U.S. App. LEXIS 19403 (9th Cir. Sept. 17, 2010).............4
10

11

*Dale v. Martek Biosciences Corp.,*
    No. CCB-09-3124, 2010 U.S. Dist. LEXIS 77265 (D. Md. July 30, 2010)........8
12

13

*In re Am. Funds Sec. Litig.,*
    556 F. Supp. 2d 1100 (C.D. Cal. 2008) ..................................... passim
14

15

*Landsberger v. Martek Biosciences Corp.,*
    No. CCB-09-3389, 2010 U.S. Dist. LEXIS 77260 (D. Md. July 30, 2010)........8
16

17

*Merck & Co. v. Reynolds,*
    559 U.S. __, 130 S. Ct. 1784 (2010) ........................................ passim
18

19

*SEC v. PIMCO Advisors Fund Mgmt. LLC,*
    341 F. Supp. 2d 454 (S.D.N.Y. 2004) .................................................9
20

21

*Sewell v. D'Alessandro & Woodyard, Inc.,*
    No. 2:07-cv-343-FtM-29SPC, 2010 U.S. Dist. LEXIS 73065 (M.D. Fla. July
    20, 2010) .............................................................................12
22

23

*Smith v. Marsh,*
    194 F.3d 1045 (9th Cir. 1999) ........................................................11
24

25

*Trainer Wortham & Co. v. Betz,*
    559 U.S. __, 130 S. Ct. 2400 (2010) ..................................................4

26

STATUTES

27

15 U.S.C. § 80a-33(b) ...........................................................................9

28

**OTHER AUTHORITIES**

17 C.F.R. § 240.10b-5(b) ............................................................................9

Fed. R. Civ. P. 11(b)(3) ............................................................................11

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Pursuant to this Court's Order dated November 8, 2010, Defendants The Capital Group Companies ("Capital Group"), Capital Research and Management Company ("CRMC") and American Funds Distributors, Inc. ("AFD") (collectively, "Defendants") respectfully submit this Memorandum in Further Support of their Motion to Dismiss Plaintiffs' Consolidated Amended Complaint ("CAC"), addressing *Merck & Co. v. Reynolds*, 559 U.S. __, 130 S. Ct. 1784 (2010) and *Betz v. Trainer Wortham & Co.*, 610 F.3d 1169 (9th Cir. 2010).

### I.

### PRELIMINARY STATEMENT

In 2008, this Court granted Defendants' motion to dismiss Plaintiffs' CAC, holding that Plaintiffs' securities law claims were time-barred. Mem. & Order Regarding Defs.' Mot. to Dismiss CAC, ECF No. 45. The Court held that the statute of limitations on these claims begins to run when a "reasonably diligent" investor would have discovered the alleged facts constituting the violation. Applying this standard, the Court determined dismissal was proper based on, among other things, the fact that on July 15, 2004—more than two years before this action was filed— Nicholas Corbi filed a lawsuit in this Court (the "*Corbi*" action), based on allegations of fraud nearly identical to those asserted in this matter and on behalf of a class nearly identical to the one proposed here.

The Ninth Circuit has remanded this matter to the Court in light of the Supreme Court's recent decision in *Merck & Co. v. Reynolds*, 559 U.S. __, 130 S. Ct. 1784 (2010), in which the Supreme Court clarified when the statute of limitations begins to run on a Section 10(b) claim. The Ninth Circuit, citing its recent decision in *Betz v. Trainer Wortham & Co.*, 610 F.3d 1169 (9th Cir. 2010), which presented a similar legal issue, indicated that for reasons of judicial efficiency remand was the proper course of action in light of *Merck*.

Gibson, Dunn &
Crutcher LLP

1          *Merck* requires that the Court reach the same conclusion today that it did

2  in 2008.  Under *Merck*, the statute of limitations does not begin to run until a plaintiff

3  discovers, or a reasonably diligent plaintiff would have discovered, the facts

4  constituting the violation, including scienter.  *Merck*, 130 S. Ct. at 1789-90.  This is

5  the very analysis that this Court has already performed.  And it remains apparent that,

6  for the reasons this Court has already articulated, a reasonably diligent plaintiff would

7  have discovered the alleged facts on which the CAC is based no later than July of

8  2004—more than two years prior to filing the Complaint in this action.

9          Simply stated, *Merck* confirms that the Court applied the correct test and

10  decided the matter correctly.  The Court should once again dismiss the CAC.

**II.**

**PROCEDURAL HISTORY**

13          The *Corbi* lawsuit was filed on July 15, 2004.  On December 5, 2006,

14  Plaintiffs filed the initial *Chin* complaint (the "Initial Complaint").  Compl., ECF

15  No. 1.  Plaintiffs filed the CAC on July 26, 2007.  The CAC alleged that Defendants

16  failed to disclose details regarding payments Defendants made to unaffiliated broker-

17  dealers.  CAC ¶¶ 2-7.  The CAC asserted claims under Sections 12(a)(2) and 15 of the

18  Securities Act of 1933 (the "Securities Act"), and Sections 10(b) and 20(a) of the

19  Securities Exchange Act of 1934 (the "Exchange Act").  *See* CAC ¶¶ 123-30, 131-36,

20  139-52.

21          On October 26, 2007, Defendants moved to dismiss the CAC in its

22  entirety.  Defendants argued that Plaintiffs' claims were time barred given that

23  Plaintiffs filed their claims more than two years from when Plaintiffs discovered or

24  could have discovered facts constituting the alleged violations of the Exchange Act,

25  and more than one year from when Plaintiffs discovered or a reasonably prudent

26  investor could have discovered facts constituting the alleged violations of the

27  Securities Act.  Mem. of P. & A., ECF No. 48.  Defendants further argued that

1  Plaintiffs failed to state a claim as a matter of law and lacked Article III standing. *Id.*

2  Defendants' motion was argued on February 27, 2008.

3  The Court agreed with Defendants that the statute of limitations had run

4  on all of Plaintiffs' claims, and dismissed the CAC in its Memorandum and Order

5  dated June 5, 2008. *In re Am. Funds Sec. Litig.*, 556 F. Supp. 2d 1100, 1112 (C.D.

6  Cal. 2008).  In doing so, the Court applied the "inquiry-plus-reasonable-diligence test"

7  adopted by the Ninth Circuit in *Betz v. Trainer Wortham & Co.*, 519 F.3d 863, 870

8  (9th Cir. 2008).  *See Am. Funds Sec. Litig.,* 556 F. Supp. 2d at 1103.  The Court found

9  that Plaintiffs' Exchange Act claims were time barred because "investors were on

10  notice of the alleged fraud scheme . . . and would, in the exercise of reasonable

11  diligence, have been aware of that scheme" more than two years prior to the filing of

12  the CAC.  *Id.* at 1110-11.  The Court's conclusion was based, *inter alia*, on the fact

13  that the *Corbi* complaint alleged "a nearly identical scheme of wrongdoing" as the

14  CAC, and thus "plainly demonstrates what an investor exercising reasonable diligence

15  in fact accomplished." *Id.* at 1111.

16  The Court also dismissed Plaintiffs' Securities Act claims.  The Court

17  noted that "[a]t oral argument . . . , Plaintiffs' counsel essentially conceded that the

18  Section 12(a)(2) claims were time-barred . . . .," and held that the CAC itself alleged

19  that the facts concerning Defendants' purported fraud were disclosed in early 2005,

20  well over a year before the Initial Complaint was filed.[1]  *Am. Funds Sec. Litig.*, 556 F.

21  Supp. 2d at 1104-1105 & n. 1.

22  Plaintiffs appealed *only* the dismissal of their Exchange Act claims.  *See*

23  Plaintiffs-Appellants' Opening Brief at 1 *Chin v. Capital Group Cos.*, No. 08-56034,

24

25

26  [1]   Plaintiffs contend that in light of the Ninth Circuit's decision vacating this Court's

27  decision, their Securities Act claims are viable and survive under *Merck*.  Plaintiffs'

28  position is without merit.  *See infra* Section IV.B.

1    2010 U.S. App. LEXIS 19403 (9th Cir. Sept. 17, 2010).  Oral argument was held
2    before the Ninth Circuit on October 9, 2009.

3            On April 27, 2010, the Supreme Court issued its decision in *Merck*.  On
4    May 3, 2010, the Supreme Court granted the *Betz* appellees' petition for certiorari,
5    vacated the Ninth Circuit's decision in *Betz*, and remanded *Betz* to the Ninth Circuit
6    "for further consideration in light of" *Merck*.  *Trainer Wortham & Co. v. Betz*, 559
7    U.S. __, 130 S. Ct. 2400, 2401 (2010).  The Ninth Circuit contemporaneously
8    requested supplemental letter briefing from the parties in the instant matter, to address
9    the impact of *Merck* on Plaintiffs' appeal.  Order, *Chin v. Capital Group Cos.* (No. 08-
10   56034) (9th Cir. May 3, 2010).  The parties submitted simultaneous letter briefs to the
11   Ninth Circuit on June 2, 2010.

12           On July 7, 2010, the Ninth Circuit granted the *Betz* appellees' motion for
13   remand to the District Court for further proceedings in light of *Merck*.  The Ninth
14   Circuit agreed with the *Betz* appellees that "judicial efficiency" favored a remand in
15   order to allow the District Court the first opportunity to decide (i) whether it was
16   necessary to supplement the factual record, and (ii) whether it should entertain
17   appellees' intended additional dispositive motions "before or after resolving the
18   statute of limitations issue . . . ."  *Betz*, 610 F.3d at 1171.  The Ninth Circuit further
19   noted that "it can never be incorrect" for a circuit court, after its decision is vacated by
20   the Supreme Court, "simply to vacate the district court's decision and to remand for
21   further proceedings in light of the pertinent Supreme Court decision."  *Id.*

22           On September 17, 2010, the Ninth Circuit vacated this Court's decision,
23   and remanded "for further proceedings consistent with *Merck* and *Betz*."  *Chin v.
24   Capital Group Cos.*, No. 08-56034, 2010 U.S. App. LEXIS 19403, at *3 (9th Cir.
25   Sept. 17, 2010).  The Ninth Circuit stated that remand was "the preferred procedure,"
26   for the reasons set forth in *Betz*.  *Id.*

27

28

Gibson, Dunn &
Crutcher LLP

# III.

## OVERVIEW OF *MERCK*

In *Merck*, the Supreme Court held that the statute of limitations for claims under the Exchange Act begins to run when a "reasonably diligent" investor could or would have discovered the alleged facts constituting the violation. *Merck,* 130 S. Ct. at 1789. There, plaintiffs had alleged that Merck failed to disclose adequately to its shareholders the dangers and risks associated with its product Vioxx, in violation of Section 10(b) of the Exchange Act. *Id.* at 1790. Merck moved to dismiss the action as untimely, arguing that an FDA letter, news reports, and earlier-filed product liability lawsuits gave plaintiffs sufficient notice to start the statute of limitations running. *Id.* at 1792-93. The District Court dismissed on that basis, the Third Circuit reversed, and the Supreme Court affirmed the Third Circuit's decision. *Id.* at 1793.

The Supreme Court held that the statute of limitations for Section 10(b) claims begins to run once (i) a plaintiff did discover or (ii) a reasonably diligent plaintiff would have discovered the facts constituting the violation, *whichever comes first*. *See id.* at 1798. The Supreme Court added that both an alleged misstatement and scienter are among the "facts constituting the violation" that must have been discovered or discoverable to start the limitations period running. *See id.* at 1796-97 & 1798. The Supreme Court confirmed that knowledge of the "facts constituting the violation" can be imputed to a plaintiff by the existence of similar prior allegations brought by regulators or other plaintiffs, but found the FDA warning letter and product liability suits that Merck had pointed to contained "little or nothing about the here-relevant scienter." *Id.* at 1799.

*Merck* further confirms that what a particular named plaintiff knew or did not know is not the relevant question when determining whether claims purportedly brought on behalf of a class are timely. Under the objective component of the standard the Supreme Court articulated, the knowledge of a reasonably diligent

1    plaintiff is imputed to the actual plaintiff and that plaintiff cannot complain that it

2    failed to *actually* discover the facts if it delayed filing suit unreasonably.

3                                              IV.

4                                         ARGUMENT

5    A.    ***MERCK* CONFIRMS THAT THE CAC IS TIME-BARRED**

6                 The Court's original analysis fully comports with the standards set forth

7    in *Merck*.  Applying those standards to the record here, it remains apparent that a

8    reasonably diligent plaintiff would have discovered the alleged facts on which the

9    CAC is based no later than July 2004.  Accordingly, *Merck* fully supports the Court's

10   decision to dismiss the CAC.

11                 **1.    This Court's Analysis Was Fully Consistent With Merck**

12                The central holding of *Merck* is that the statute of limitations for a

13   Section 10(b) claim begins to run when a plaintiff did discover or would have

14   discovered "the facts constituting the violation."  *See Merck,* 130 S. Ct. at 1798.

15   *Merck* expressly validates the use of "inquiry notice"—*i.e.*, "the point where the facts

16   would lead a reasonably diligent plaintiff to investigate further"—to ascertain "when

17   the facts would have prompted a reasonably diligent plaintiff to begin investigating."

18   *Id*. at 1797-98.

19                This Court's dismissal of Plaintiffs' Exchange Act claims was based on

20   the same analysis the Supreme Court articulated in *Merck*.  *See Am Funds Sec. Litig.*,

21   556 F. Supp. 2d at 1110-11.  The Court expressly applied the Ninth Circuit's "inquiry-

22   plus-reasonable diligence test," which required it to determine "when the plaintiff had

23   inquiry notice of the facts giving rise to his securities claim" and "whether the plaintiff

24   exercised reasonable diligence in investigating the facts underlying the alleged fraud."

25   *Id*. at 1103 (citation and internal quotation omitted).  The Court expressly stated that,

26   under the test it applied, "the statute of limitations period begins to run once the

27   investor, in the exercise of reasonable diligence, should have discovered the facts

28   underlying the alleged fraud."  *Id*. at 1110 (internal quotation and citation omitted).

Gibson, Dunn &
Crutcher LLP

Accordingly, *Merck* confirms that this Court undertook the correct inquiry because both tests require an objective analysis of when an investor exercising reasonable diligence would have discovered the facts underlying the alleged fraud.

### 2.     A Reasonably Diligent Investor Would Have Discovered the Facts Giving Rise to the Claims Asserted in the CAC

*Merck* also confirms that this Court correctly applied the law to the allegations and factual record before it.  The Court examined the numerous events, including the *Corbi* complaint, press articles, and regulatory investigations, that should have prompted Plaintiffs to investigate further, and then examined when a reasonably diligent investor would have had notice of the fraud alleged in the CAC. *Am. Funds Sec. Litig.*, 556 F. Supp. 2d at 1105-11.  The Court concluded that "by November 2003, or shortly thereafter, investors were on notice of the alleged fraud scheme described in this case and would, in the exercise of reasonable diligence, have been aware of that scheme." *Id.* at 1110-11.  The Court also noted that "because of the extraordinary detail of what was publicly disclosed by at least November 2003," this case presented a unique situation in which "[t]he inquiry notice and reasonable diligence tests tend to merge." *Id.* at 1110.

Nothing in *Merck* provides a basis for disturbing the Court's conclusion. All the facts on which the CAC was based were clearly known or knowable more than two years before the CAC was filed, as can be seen by comparing the Initial Complaint to the *Corbi* complaint[2] and the media reports that were before this Court. *Merck* supports such a comparison, because the Supreme Court examined publicly available communications concerning Vioxx and the earlier product liability complaints filed against Merck. *See Merck*, 130 S. Ct. at 1791-92 & 1799.  In *Merck*,

---

[2]   *See* Complaint, *Corbi v. The Capital Group Cos.,* No. CV 04-5593, 2009 U.S. Dist. LEXIS 120597 (C.D. Cal. Dec. 28, 2009) (filed July 15, 2004), attached as Exhibit A to the Declaration of Andrew Z. Edelstein submitted in connection with Defs.' Mot. to Dismiss the CAC, ECF No. 49  (hereafter, "Edelstein Decl.").

those sources did not trigger the running of the limitations period *only* because they contained no allegations of fraud. *Id.* at 1799 ("Merck does not claim that these complaints contained any specific information suggesting the fraud alleged here"). Just the opposite is true in this case, as can be seen by placing the factual allegations in this case next to the allegations in *Corbi* and the press record. *See* Appendix A.

Based on this record, the Court found that "the allegedly unlawful practices described in the CAC were the subject of lengthy news articles in prominent national publications as much as three years before the CAC was filed in this Court." *Am. Funds Sec. Litig.*, 556 F. Supp. 2d at 1107. The Court further found that "the allegations in the Chin complaint are almost a verbatim copy of the allegations found in the Corbi complaint." *Id.* at 1109. This Court's conclusions were fully consistent with *Merck. See Landsberger v. Martek Biosciences Corp.*, No. CCB-09-3389, 2010 U.S. Dist. LEXIS 77260, at *10-11 (D. Md. July 30, 2010) (applying *Merck* and dismissing Exchange Act claims as time barred where "several of the events complained of were matters of public record," and certain events were the subject of a prior class action filed in the same court); *Dale v. Martek Biosciences Corp.*, No. CCB-09-3124, 2010 U.S. Dist. LEXIS 77265, at *10-11 (D. Md. July 30, 2010) (same).

### 3.   *Corbi* Demonstrates That Plaintiffs Had Constructive Notice of the Claims Asserted in the CAC

In contrast with *Merck*, the record here leaves no question about what a reasonably diligent investor would have known and when he or she would have known it. As this Court held, that "other similarly-situated investors—that is, the Corbi Plaintiffs—were able to investigate and bring a substantively similar complaint by mid-2004, well over two years earlier. . . . plainly demonstrates what an investor exercising reasonable diligence in fact accomplished." *Am. Funds Sec. Litig.,* 556 F. Supp. 2d at 1111. Indeed, the statutory bases for the claims in *Corbi* and those here

are substantially the same.[3]  *See generally SEC v. PIMCO Advisors Fund Mgmt. LLC*, 341 F. Supp. 2d 454, 470 (S.D.N.Y. 2004) ("Section 34(b) prohibits material misrepresentations or omissions in terms similar to Section [sic] 10b-5") (citation omitted).  Both complaints alleged a "fraudulent scheme" whereby Defendants purportedly made undisclosed and improper payments to unaffiliated broker-dealers to cause the broker-dealers to direct investors into the American Funds and then "siphon[ed] fund assets" from investors in order to make additional payments to brokers to promote the funds.  *Compare* Edelstein Decl. Ex. A ¶¶ 49, 89, *with* Initial Complaint ¶¶ 5, 44.  The *Corbi* complaint (brought by, among others, the same counsel for Plaintiffs here) also alleged, presumably consistent with Federal Rule of Civil Procedure 11, that the "fraud" was committed with scienter, *see* Edelstein Decl. Ex. A ¶¶ 89, 108, and it did so on behalf of a proposed class substantially similar to the one proposed here.  The CAC in this case repeated verbatim *Corbi*'s core allegations relating to the purportedly misleading aspects of the Funds' prospectuses and parroted many of its other core allegations.  *See* Appendix A.

Plaintiffs' position that they could not have discovered the Exchange Act claims until February 2005 when the NASD and California Attorney General officially filed suits against the American Funds is unavailing.  Based on news articles, press releases, SEC investigations, and pre-complaint discussions of the California Attorney General's investigation, well before the NASD filed its complaint, the *Corbi* plaintiffs asserted the same underlying factual allegations made here on behalf of a proposed class substantially similar to the one proposed here.

---

[3]   *Compare* 15 U.S.C. § 80a-33(b) (making it unlawful "for any person to make any untrue statement of a material fact in any . . . document filed or transmitted pursuant to [the Act]" or "to omit to state therein any fact necessary in order to prevent the statements made therein . . . from being materially misleading") *with* 17 C.F.R. § 240.10b-5(b) (making it unlawful "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading").

Gibson, Dunn & Crutcher LLP

1    This is in stark contrast to the facts in *Merck*, in which there was a

2 dispute over whether the plaintiffs in the exercise of reasonable diligence could have

3 discovered sufficient facts to plead scienter earlier than they did. *Merck,* 130 S. Ct. at

4 1799.  Indeed, the Supreme Court specifically noted that the earlier-filed complaints

5 did not trigger the running of the limitations period because there were no allegations

6 of fraud in those cases. *Id.* at 1799.  That is not the case here.  Because Plaintiffs here

7 could have filed the Exchange Act claims in the CAC when *Corbi* was filed, those

8 claims are time barred.

9    **4.    Numerous Press Articles (Including the Mainstream**

10    **Media) Disclosed the Alleged Facts Pleaded in the CAC**

11    Even if the *Corbi* complaint was not sufficient to show that enough

12 information existed for a reasonably diligent investor to allege the claims here more

13 than two years before the CAC, numerous news articles and press releases make it

14 apparent that the facts underlying Plaintiffs' claims were widespread and in the public

15 domain well over two years prior to filing the CAC on December 5, 2006.

16    In *Merck*, the FDA letter disclosed only that Merck should have provided

17 additional information about the safety of Vioxx, not that it was purposefully

18 withholding critical information.  130 S. Ct. at 1799.  And the public discussion about

19 Vioxx involved only a "debate" about whether Vioxx was safe, not revelations that

20 Merck intentionally misrepresented Vioxx's risks. *Id.* at 1791.

21    Here, by contrast, the public was informed by multiple sources that

22 Defendants were targets of regulatory investigations and that some regulators believed

23 that the sales practices at issue might violate federal securities laws.[4]  From those

24 _____

25 [4]   *See, e.g.,* Edelstein Decl. Ex. B at 1 (*Los Angeles Times* Nov. 18, 2003) ("The SEC charged Morgan Stanley with failing to disclose the brokerage payments, while the

26 NASD alleged the firm violated [its] rules . . . ."); Edelstein Decl. Ex. C at 1 (*San Jose Mercury News* Jan. 3, 2004) (California Attorney General launched an investigation

27 into whether CRMC "defrauded investors by failing to disclose deals with brokers . . . ."); Edelstein Decl. Ex. E at 1(*New York Times* June 29, 2004) ("Regulators [including

28

Gibson, Dunn &
Crutcher LLP

10

public disclosures, a reasonably diligent plaintiff could have discovered the "facts
constituting the violation," as the *Corbi* plaintiffs—and their counsel, one of whom
represents the plaintiffs here—did. Counsel for the *Corbi* plaintiffs must have
believed the allegations in that case could be made consistent with the requirements of
Rule 11. *See* Fed. R. Civ. P. 11(b)(3). If it were true that there was no publicly
available information indicating the existence of scienter when the *Corbi* complaint
was filed, then no counsel could have permitted its name to be attached to the *Corbi*
complaint's allegations of scienter (Edelstein Decl. Ex. A ¶¶ 89, 108), which (like the
rest of that complaint) were purportedly based on, *inter alia*, "media reports," "press
releases," and "news articles." *Id*. at 1.

**B.   PLAINTIFFS WAIVED THEIR SECURITIES ACT CLAIMS,
      WHICH ARE TIME-BARRED IN ANY EVENT**

At the recent status conference on November 8, 2010, Plaintiffs
suggested they may attempt to revive their Securities Act claims. But, as the Court
has noted, "Plaintiffs' counsel essentially conceded that the Section 12(a)(2) claims
were time-barred" at oral argument before this Court on Defendants' Motion to
Dismiss the CAC. *Am. Funds Sec. Litig.*, 556 F. Supp. 2d at 1102, 1104-1105 & n. 1;
*see also* Rep.'s Tr. of Proceedings Held on Feb. 27, 2008, at 8-9, ECF No. 66.
Further, Plaintiffs did not appeal this Court's dismissal of their Securities Act claims
to the Ninth Circuit. *See* Plaintiffs-Appellants' Opening Brief at 1 *Chin v. Capital
Group Cos.*, No. 08-56034, 2010 U.S. App. LEXIS 19403 (9th Cir. Sept. 17, 2010).
Those claims are therefore waived. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir.
1999) ("[A]rguments not raised by a party in its [appellate] brief are deemed
waived.").

---

the SEC] are examining whether Capital Research rewarded the brokerage firms that
aggressively sold its funds by funneling commissions on securities trades chiefly to
those firms."); *see also Am. Funds Sec. Litig.*, 556 F. Supp. 2d at 1107-08 (describing
SEC's industry-wide investigation into the practices alleged to be fraudulent here).

1        Even if not waived, those claims are nevertheless time-barred.  Indeed,

2  Plaintiffs' Securities Act claims are even less viable than their time-barred Exchange

3  Act claims.  The Securities Act, which has a one-year statute of limitations, does not

4  require Plaintiffs to plead scienter and thus "the 12(a)(2) clock starts ticking when a

5  reasonably diligent plaintiff would have discovered facts which reveal an untrue

6  statement or omission."  *Sewell v. D'Alessandro & Woodyard, Inc.*, No. 2:07-cv-343-

7  FtM-29SPC, 2010 U.S. Dist. LEXIS 73065, at \*6 (M.D. Fla. July 20, 2010) (applying

8  *Merck* and dismissing Securities Act claims).  Plaintiffs have repeatedly conceded that

9  the NASD's lawsuit filed against Defendants in February 2005 disclosed the

10  violations alleged here and started the running of the statute of limitations clock.[5]  For

11  this reason, this Court concluded that "[t]here is no good reason given, nor could one

12  be concocted, for delaying the filing of the *Chin* complaint for more than a year after

13  NASD had publicly concluded that American Funds should be disciplined for the

14  conduct that is the focus of this lawsuit."  *Am. Funds. Sec. Litig.*, 556 F. Supp. 2d at

15  1105.  Nothing in *Merck* alters that conclusion.

16

17  [5]  *See* CAC ¶ 7 ("The truth was first partially disclosed on February 16, 2005 when

18  the NASD brought suit against Defendant American Fund Distributors, for its
involvement in this insidious scheme . . . .");  Plaintiffs-Appellants' Opening Brief at 6

19  *Chin v. Capital Group Cos.*, No. 08-56034, 2010 U.S. App. LEXIS 19403 (9th Cir.

20  Sept. 17, 2010) ("The truth about Defendants' scheme was first disclosed February 16,
2005 when the NASD brought suit against Defendant American Fund Distributors . . .

21  .");  *id.* at 17 (claiming that the NASD and California Attorney General's actions were

22  "the first point at which there existed discoverable facts constituting the fraud");

23  Plaintiffs-Appellants' Reply Brief at 3, 9-10 *Chin v. Capital Group Cos.*, No. 08-
56034, 2010 U.S. App. LEXIS 19403 (9th Cir. Sept. 17, 2010) (asserting that filing of

24  NASD suit started the clock ticking);  *see also* Pls.' Opp. to Defs.' Mot. to Dismiss 12,

25  ECF No. 54 ("Here, the American Funds' Prospectuses and accompanying SAIs
contained the same exact language that the SEC determined in the SEC enforcement

26  actions again Edward Jones to be inadequate. The NASD and California Attorney

27  General's Office made similar conclusions in their suits against the American Funds

28  Defendants.").

Gibson, Dunn &
Crutcher LLP

1

# V.

## CONCLUSION

For the foregoing reasons, the Court should once again dismiss the CAC in its entirety, with prejudice, as time-barred.

DATED:  November 29, 2010           GIBSON, DUNN & CRUTCHER LLP


                                    _____
                                             /s/
                                       GARETH T. EVANS
                                       ANDREW J. DEMKO
                                    333 S. Grand Avenue
                                    Los Angeles, CA 90071
                                    Telephone:  (213) 229-7734
                                    Facsimile:   (213) 229-6734

                                    MILBANK, TWEED, HADLEY
                                     & McCLOY LLP
                                       JAMES N. BENEDICT
                                       SEAN M. MURPHY
                                       C. NEIL GRAY
                                    One Chase Manhattan Plaza
                                    New York, NY 10005-1413
                                    Telephone:  (212) 530-5127
                                    Facsimile:   (212) 530-5219

                                    *Counsel for Defendants Capital*
                                    *Research and Management Company*
                                    *and American Funds Distributors, Inc.*

Gibson, Dunn &
Crutcher LLP

13