**REESE RICHMAN LLP**
Michael R. Reese (Cal. State Bar No. 206773)
mreese@reeserichman.com
Kim E. Richman
krichman@reeserichman.com
Belinda L. Williams
bwilliams@reeserichman.com
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re AMERICAN FUNDS SECURITIES LITIGATION<br><br>This document related to:<br><br>ALL ACTIONS | MASTER FILE NO.<br>CV 06-7815 GAF (RNBx)<br><br>**PLAINTIFFS' RESPONSE TO NOVEMBER 9, 2010 ORDER REGARDING UNITED STATES SUPREME COURT DECISION OF** *MERCK & CO., INC. v. REYNOLDS* |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………...II

RESPONSE…………………………………………………………………....…1

I. *Merck* Rejects the Inquiry Notice Standard Proposed by Defendants and Relied Upon by This Court in its Prior Decision Dismissing the Complaint…..……………………………………………………...…….….…1

II. Comparison of the "Red Flags" in *Merck* that ***Did Not*** Trigger the Statute of Limitations to Events Relied Upon By Defendants Here Also Mandates Reversal………………………………………………….............................3

III. Defendants Fail to Demonstrate That Their Intent to Deceive was Discoverable More than Two Years Prior to the Filing of the Complaint………………………………………..………………….......5

IV. The Materiality of Defendants' Misconduct was not Discoverable Until the California Attorney General Office Filed its Action……..…………..…….8

V. A Reasonable Diligent Mutual Fund Investor Would Not Have Discovered Facts Constituting the Elements of Scienter or Materiality More Than Two Years Prior to the Filing of the Lawsuit......................................................9

CONCLUSION.........................................................................................13

# TABLE OF AUTHORITIES

*Benak v. Alliance Capital Management, LP*, 435 F.3d 396 (3d Cir. 2006)…...……10

*Betz v. Trainer Wortham & Co.,* 610 F.3rd. 1169 (9th Cir. 2010)…………………13

*In re Am. Funds Secs. Litig.*, 556 F. Supp. 2d 1100 (C.D. Cal. 2008)……….1, 2, 3

*In re Bare Escentuals, Inc. Sec. Litig.*
   2010 U.S. Dist. LEXIS 103612, *74 (N.D. Cal. Sept. 30, 2010)……………....12

*Merck & Co., Inc. v. Reynolds* 130 S. Ct. 1784, 176 L. Ed. 2d 582 (2010)...*passim*

*Staehr v. Hartford Financial Services Group, Inc.* 547 F.3d 406 (2d Cir. 2008)..10

Plaintiffs respectfully submit the following in response to the Court's November 9, 2010 order (Dkt. 88) requesting briefing regarding the effect of the United States Supreme Court's decision in *Merck & Co., Inc. v. Reynolds* 130 S. Ct. 1784, 176 L. Ed. 2d 582 (2010) ("*Merck*") on this Court's decision dismissing the First Amended Complaint with prejudice on June 5, 2008 (Dkt. 69)("Order").[1] As seen below, *Merck* requires rejection of Defendants' arguments that the claims asserted in the above-captioned action are time barred. Accordingly, this Court's Order based on these arguments made by Defendants must now be reversed.

## RESPONSE

**I.    *Merck* Rejects the Inquiry Notice Standard Proposed By Defendants, and    Relied Upon by the Court in its Prior Decision Dismissing the Complaint**

In *Merck*, the United States Supreme Court rejected the same arguments made by the Defendants here that "inquiry notice" triggered the statute of limitations that this Court relied upon in rendering its decision dismissing the above-referenced action as time barred. Accordingly, the prior decision of this Court dismissing the Complaint as time barred must now be reversed.

Specifically, the Supreme Court held in *Merck* that: "***we reject 'inquiry notice' as the standard generally***: We cannot reconcile it with the statute, which simply provides that 'discovery' is the event that triggers the 2-year limitations period – for all plaintiffs". *Merck*, 176 L. Ed. 2d at 589 (emphasis added). The Supreme Court based its reasoning on the plain language of the statute, holding that:

---

[1] The Order is reported at *In re Am. Funds Secs. Litig.*, 556 F. Supp. 2d 1100 (C.D. Cal. 2008).

1

> If the term "inquiry notice" refers to the point where the facts would lead a reasonably diligent plaintiff to investigate further, that point is not necessarily the point at which the plaintiff would already have discovered facts showing scienter or other "facts constituting the violation." ***But the statute says that the plaintiff's claim accrues only after the "discovery" of those latter facts. Nothing in the text suggests that the limitations period can sometimes begin before "discovery" can take place***….Because the statute contains no indication that the limitations period should occur at some earlier moment before "discovery", when a plaintiff would have begun investigating, we cannot accept [defendant's] argument.

*Merck*, 176 L. Ed. 2d at 598 (emphasis added).

The inquiry notice standard rejected by the Supreme Court in *Merck* served as the sole basis for this court's dismissal of the above-referenced action.[2] As stated by this Court in dismissing the Complaint:

> Defendants argue that the filing of the Corbi complaint on July 15, 2004 (CV 04-5593 GAF (RNBx)), as well as publicly available information in the media, constituted *inquiry notice* sufficient to trigger the running of the limitations period. (Mot. at 19-23.) Defendants also argue that the very existence of the Corbi complaint is evidence that a reasonable investor would have been on *inquiry notice* to investigate Defendants' purported wrongdoing well over two years before the Chin complaint was filed because other investors - that is, the Corbi Plaintiffs - did just that. For the reasons discussed in greater detail below, the Court agrees.

---

[2] Here, it is uncontested that Plaintiffs' actual discovery of the facts constituting Defendants' violation of the federal securities laws occurred well within the statute of limitations.

2

*In re Am. Funds Secs. Litig.,* 556 F. Supp. 2d at 1103 (emphasis added).

Accordingly, because this Court used the inquiry notice standard that has been rejected by the Supreme Court, its decision must now be reversed.

## II. Comparison of the "Red Flags" in *Merck* That *Did Not* Trigger the Statute of Limitations to the Events Relied Upon by the Court Here Also Mandates Reversal

Comparison of the facts in *Merck* with those in this case relied upon by this Court in its inquiry notice analysis that resulted in the dismissal of the Complaint also mandates reversal of this Court's decision.

The securities fraud lawsuit filed in *Merck* alleged that the defendant "knowingly misrepresented the risks of heart attacks accompanying the use of Merck's pain-killing drug, Vioxx (leading to economic losses for investors when the risks later became apparent)." *Merck*, 176 L. Ed. 2d at 590.  At issue in *Merck* was whether numerous red flags regarding the cardiovascular risks of Vioxx triggered the running of the statute of limitations. *Id.* If discovery of the fraud had occurred more than two years prior to the filing of the lawsuit, then the suit was barred by the statute of limitations. *Id.*

As seen immediately below, as many, if not significantly more, "flags" existed in *Merck* more than two years before the filing of the federal securities lawsuit in that case than existed in the above-referenced case now before this Court.  However, despite these numerous and significant warnings in *Merck*, the United States Supreme Court held that ***they did not constitute enough facts to trigger the running of the statute of limitations***. *Merck*, 176 L. Ed. 2d at 599.

In *Merck*, the securities fraud lawsuit was filed on November 6, 2003. *Id.* at 590. All of the following red flags regarding the dangers of Vioxx preceded the filing of the federal securities fraud lawsuit by more than two years:

3

- a press release by Merck that announced a study (called the "VIGOR" study) that reflected adverse cardiovascular risks for Vioxx (March 2000);

- public discussion by the Food and Drug Administration ("FDA") regarding the cardiovascular risks of Vioxx (February 2001);

- the filing of a products-liability lawsuit against Merck regarding the cardiovascular risks of Vioxx (May 2001);

- publication of a widely available article by the Journal of the American Medical Association stating that "the available data [on Vioxx] raised a 'cautionary flag'" (August 2001);

- a publicly released warning letter sent by the Federal Drug Administration to Merck that accused Merck of ***"false, lacking in fair balance, or otherwise misleading"*** marketing of Vioxx (September 2001);

- the filing of several product-liability lawsuits based on the cardiovascular risks of Vioxx (September 2001); and,

- a 6.6% drop in Merck share price after the FDA warning and the additional product-liability lawsuits (September 2001).

*Id.* at 591-592. Yet, despite all of these events that ***preceded*** the filing of the lawsuit in *Merck* by more than two years, the United States Supreme Court held that they were insufficient to trigger the running of the statute of limitations. *Id.*

Here, in comparison, the "flags" relied upon by Defendants as a trigger to the statute of limitations pale in comparison to those in *Merck* that did not trigger the statute of limitations. Notably, in the two years prior to the filing of the instance matter there was no governmental action against Defendants (as there was in *Merck*) accusing Defendants of misleading statements; nor was there a drop in share price as there was in *Merck*. Rather, all that existed in the above-referenced matter two years prior to suit were a limited number of newspaper articles that made only passing reference to the American Funds (and, as discussed below, in which Defendants denied committing any wrongdoing) and a derivative action – *Corbi v. The Capital Group Cos.*, 04-cv-5593 – that was neither publicly available nor made a claim for securities fraud or contained facts constituting scienter or materiality. Accordingly, these "flags" relied upon by Defendants here fare no better that the various lawsuits, press releases and other publicly available documents relied upon by the Merck ***that were rejected by the Supreme Court as failing to trigger the statute of limitations***. *Merck*, 176 L. Ed. 2d at 599-600. Accordingly, Defendant's statute of limitations argument must now be rejected.

### III. Defendants Fail to Demonstrate That Their Intent to Deceive was Discoverable More than Two Years Prior to the Filing of the Complaint

In *Merck*, the United States Supreme Court held that facts evidencing scienter, which is a key element of a securities fraud claim, had to be discovered to trigger the statute of limitations. *Merck* at 579-580 ("we hold that a cause of action accrues…when a reasonably diligent plaintiff would have discovered, 'the facts constituting the violation'….We also hold that the 'facts constituting the violation' includes the fact of scienter, 'a mental state embracing intent to deceive, manipulate, or defraud'"); *Merck* at 596-598. As reasoned by the Supreme Court, to hold otherwise would, in fact, reward:

5

a defendant's deceptive conduct [that] may prevent a plaintiff from even *knowing* that he or she has been defrauded. Otherwise, the law which was designed to prevent fraud could become the means by which it is made successful and secure. Accordingly, where a plaintiff has been injured by fraud and remains in ignorance of it without fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered.

*Merck*, 176 L. Ed. 2d at 594 (internal citations omitted).

Here, Defendants cannot point to anything in the record that constitutes discovery of Defendants' scienter more than two years prior to the filing of the lawsuit. In fact, Defendants have steadfastly denied to this very day that they ever had "an intent to deceive, manipulate, or defraud." *See* Defendants-Appellees's Opening Brief at 36 ("Defendants made all applicable disclosures"), 43-45 ("Plaintiffs Fail to Plead Scienter [because] the challenged payments made to brokers were intended for a benign commercial motive…where a defendant's motive is a normal business objective, it cannot by itself establish scienter").[3]

Moreover, in the various news articles Defendants cite to, and this Court relied upon in dismissing the action with prejudice, as "flags" triggering the statute of limitations more than two years prior to the filing of the complaint, ***Defendants denied liability and claimed they had done nothing wrong***. *See* Declaration of Andrew Z. Edelstein dated October 26, 2007 (Dkt. 49), Exhibits C and D. ***As a result, Defendants actually gained market share in the mutual fund industry, as***

---

[3] These claims of innocence on behalf of Defendants are belied by the securities fraud suit levied against Defendants by the California Attorney General's Office. (*See* Consolidated Amended Complaint (Dkt. 45) at ¶ 5 quoting the California Attorney General's Office: "The payments are little more than kickbacks to buy preferential treatment. Investors deserve to know that. The law American Funds violated is based on that simple principle.") It is uncontested, however, that the above-captioned action was filed well within two years of the California Attorney General's Office action against Defendants.

6

*investors believed Defendants' false assurances that they were not involved in any impropriety.* As stated in a June 29, 2004 *New York Times* article:

> As manager of the American Funds, Capital Research has been the biggest beneficiary of the fund scandal, winning business from investors fleeing other companies, like Putnam and Strong, that had been sued by regulators or otherwise tainted by the investigation into improper fund tactics.

Edelstein Declaration, Exhibit E; *see also* Edelstein Declaration, Exhibit F (November 15, 2004 Wall Street Journal article stating that American Funds had "the biggest annual gain [in new investments] for a single company in mutual-fund history").

In other words, instead of constituting "storm warnings" as Defendants claim, these articles reflected "clear skies and calm waters" for Defendants as investors abandoned other mutual funds and jumped into Defendants' boat, buying Defendants' mutual funds at a record pace during the period of time at issue upon the belief that Defendants were untouched by scandal and fraud. *Id.*

Moreover, these denials of liability by Defendants here are no different from the denials of liability made by the defendant in *Merck*. Specifically, while the defendant in *Merck* admitted that studies had shown that its pain-killer Vioxx resulted in a higher rate of heart attacks than naproxen pain-killers, Merck claimed that the difference could be attributable to the fact that naproxen inhibited an enzyme called COX-1 (cycclooxygenase-1) that Vioxx did not inhibit, and that inhibition of the COX-1 enzyme had a beneficial side effect (prevention of platelet aggregation) not present in Vioxx. *Merck*, 176 L. Ed. 2d at 591. In other words, Merck claimed that "the troubling cardiovascular findings [regarding Vioxx] might be due to the absence of a benefit conferred by naproxen rather than a harm caused by Vioxx." *Id.* Merck made similar denials of liability elsewhere. *Id.*

7

Because the Defendants here made the same type of denials of culpability as made in *Merck*, there was no discovery of scienter more than two years prior to the filing of the lawsuit here. Accordingly, the above-captioned action is timely and Defendants' arguments to the contrary must be rejected.

## IV. The Materiality of Defendants' Misconduct Was Not Discoverable Until After the California Attorney General's Office Filed Its Action

While *Merck* focused on scienter, the United States Supreme Court made clear that discovery of all the elements of a securities fraud claim are necessary to trigger the running of the statute of limitations. *Merck*, 176 L. Ed. 2d at 596. ("The statute says that the limitations period does not begin to run until discovery of the facts constituting the violation"). This includes materiality, which is one of the facts constituting violation of the securities laws at issue here. *See Basic, Inc. v. Levinson*, 485 U.S. 224, 231-232 (1988).

Here, the Complaint alleges materiality by pleading that Defendants' misappropriated no less that $450 million. Complaint at 18. It is uncontested that this amount of $450 million was not in the public record, nor otherwise discoverable, until the California Attorney General's office disclosed this amount in its action against Defendants.[4] It is also uncontested that the above-captioned action was within two years of the California Attorney General's action. Accordingly, because the *materiality* of Defendants' misconduct was not discoverable until the California Attorney General's action was brought, the above-captioned action is not barred by the statute of limitations.

---

[4] Not a single document relied upon by Defendants for its statute-of-limitations argument discloses the hundreds of millions of dollars at issue.

8

**V.    A Reasonably Diligent Mutual Fund Investor Would Not Have Discovered Facts Constituting Scienter or Materiality More Than Two Years Prior to Filing of the Lawsuit**

In *Merck*, the Supreme Court held that:

> the limitations period does not begin to run until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered "the facts constituting the violation," including scienter – irrespective of whether the actual plaintiff undertook a reasonably diligent investigation.

*Merck*, 176 L. Ed. 2d at 599.  Here, it is uncontested that discovery of the "facts constituting the violation" did not occur until the California Attorney General's Office filed suit against Defendants for securities fraud.  Neither scienter nor materiality were known, or knowable, to the Plaintiffs and other class members until the California Attorney General revealed them in its fraud suit against Defendants. Moreover, given the facts of this matter, it is unreasonable to expect that a diligent mutual fund investor would have discovered "the facts constituting the violation, including scienter" or "materiality" prior to the filing of the California Attorney General's securities fraud suit.

First, as observed before the Ninth Circuit during oral argument on this matter, this case involves people who bought mutual funds – *i.e.* persons who are not sophisticated investors, but rather "mom and pop" type of investors who rely on others to make and track their investments.  In fact, a large portion of mutual funds fees paid by these investors is supposed to go to mutual fund advisors that relieve the investors from having to make the investment choices and track the performance of the investments.[5]  Rather, that is done by the mutual fund advisors. In other words, as observed before the Ninth Circuit during oral argument, a

---

[5] As alleged in the complaint, however, a large amount of these fees instead went as secret kickback payments to brokers.

9

typical mutual fund purchaser is someone who reaches for the sports page of their local paper rather than scour the business section of the Wall Street Journal. It is the reasonableness of this ordinary "mom and pop" type of plaintiff that is at issue here. *See e.g. Benak v. Alliance Capital Management, LP*, 435 F.3d 396 (3d Cir. 2006) (mutual fund investors held to a lower standard of notice because they may be unaware of where their investments are placed, reasoning that: "Appellees are mutual fund advisers who are responsible for making investment choices on behalf of the Fund's investors. Appellants make a compelling argument that, as 'passive' mutual fund investors, they cannot be held to the same notice standards as the appellees entrusted with their money…In short, the reasonable mutual fund investor arguably has less reason to monitor the health of companies in which he or she is invested and is less likely to have accurate contemporaneous information regarding where his or her money is invested").

The case of *Staehr v. Hartford Financial Services Group, Inc.* 547 F.3d 406 (2d Cir. 2008) is on point here in determining what a reasonable diligent, non-sophisticated investor would have been able to discover.[6] And just as in *Staehr*, the Defendants' statute of limitation arguments must be rejected.

The facts of *Staehr* are similar to those presented here. In both cases, Plaintiffs alleged that defendants had engaged in illegal kickbacks, thereby misrepresenting the value of their securities. *Id.* at 409. Likewise, the defendants in *Staehr* moved to dismiss, arguing, as the defendants do here, that the statute of limitations had expired before plaintiffs had brought their suit. *Id.*

The defendants in *Staehr* cited to several news articles, as well as a previously filed class action lawsuit based on the same conduct at issue in that matter, to argue that the plaintiffs were on "inquiry notice" more than two years

---

[6] *Staehr* was decided after this Court's decision dismissing the Complaint with prejudice. Accordingly, this Court did not have the *Staehr* decision to consider when it issued its ruling on Defendants' Motion to Dismiss.

10

prior to filing suit and therefore precluded by the statute of limitations. Defendants make the same argument here. As in *Staehr*, these arguments must now be rejected.

In *Staehr*, the defendants cited to a number of articles they claimed triggered inquiry notice. The Second Circuit examined these articles and found them to be either too vague or obscure to constitute inquiry notice. *Id.* at 432-33. The same applies here. The articles cited by Defendants here were not readily accessible or else too vague to constitute "storm warnings" triggering inquiry notice. In fact, review of the articles shows the exact opposite of what Defendants claim.

Second, the Second Circuit in *Staehr* rejected the defendants' argument that a prior class action lawsuit constituted inquiry notice. *Id.* at 434-35. This Court should reject the same argument made by Defendants here.

Specifically, as in *Staehr*, the prior lawsuit at issue here (the "Corbi action") was not readily accessible to the public. *Id.* at 435 ("It would be unreasonable to expect an ordinary investor to be aware of this lawsuit"). Furthermore, like Defendants here, the defendants in Staehr also argued that if the plaintiff in the prior lawsuit "could detect storm warnings that would cause him to file a lawsuit containing allegations of fraud…so could the Appellants." *Id.* The Second Circuit rejected this argument and reasoned that an attorney that files a prior lawsuit does not set the standard of the ordinary investor. *Id.* at 436. ("the fact that an investor of more-than ordinary intelligence filed a lawsuit…cannot be used as a bellwether for the adequacy of the "storm warnings."). The same is true here and Defendants' identical argument here should be rejected for the same reason.

Finally, the best yardstick to determine the length of time it would take an individual mutual fund investor to discover the "facts constituting the violation, including scienter" (*Merck* at 599) and materiality is the amount of time it took the California Attorney General's Office – regulators armed with a team of investigators and subpoena power – to conclude their investigation and bring its

11

securities fraud action against Defendants. A reasonably diligent plaintiff, lacking the tools and resources of the California Attorney General's Office, certainly should be afforded no less time. And because the complaint here was filed within two years of the California Attorney General Office's action, it is not barred by the statute of limitations.

Ultimately, the issue is fact-intensive. Accordingly, as repeatedly recognized by the courts, both in decisions rendered before and after the Supreme Court's decision in *Merck*, the issue cannot be decided on a motion to dismiss. *See e.g. Staehr*, 547 F.3d at 436 (reversing lower court dismissal of securities law claims based upon statute of limitations grounds); *In re Bare Escentuals, Inc. Sec. Litig.* 2010 U.S. Dist. LEXIS 103612, *74 (N.D. Cal. Sept. 30, 2010) (denying motion to dismiss based upon statute of limitations grounds, stating that: "[t]he court declines to dismiss plaintiffs' claims as time-barred. The determination of inquiry notice is fact-intensive."). Accordingly, this Court should now reject Defendants' statute of limitations arguments made by Defendants in their Motion to Dismiss.

## **CONCLUSION**

In sum, there was no discovery here of the elements of Defendants' commission of securities fraud until the California Attorney General's Office brought suit for securities fraud in 2005 alleging that Defendants knowingly had defrauded investors of no less than $450 million. Under *Merck*, discovery of the facts constituting the element of securities fraud – *i.e.* **scienter** and **materiality** - are required for the triggering of the statute of limitations. Those facts constituting the elements of securities fraud were not available until the California Attorney General Office's action. As uncontested by Defendants, the above-captioned action was brought well within two years of the California Attorney General Office's action against Defendants. Therefore, this action was filed well within the statute of limitations and defendants' argument to the contrary must be denied.[7]

Dated: November 29, 2010   **REESE RICHMAN LLP**
*/s/ Michael R. Reese*
Michael R. Reese
Kim. E. Richman
Belinda L. Williams
875 Avenue of the Americas, 18th Floor
New York, New York 10001

*Attorneys for Plaintiff and the Proposed Class*

---

[7] This Court's November 9, 2010 order requesting briefing regarding both *Merck* and *Betz v. Trainer Wortham & Co.,* 610 F.3rd. 1169 (9th Cir. 2010). Plaintiffs interpret *Betz* as standing for the proposition that once the United Supreme Court has spoken for the first time on an issue – as it did in *Merck* – that overturned the standard used by some courts, an appellate court has the power to remand to the district court a decision pending appeal for further consideration in light of the recently established Supreme Court precedent. *Id.* at 1171. ("We do not see how it can ever be incorrect, once the Supreme Court has vacated a circuit court decision and remanded for further assessment in light of one of its decisions, for the court of appeals simply to vacate the district court's decision and to remand for further proceedings in the light of the pertinent Supreme Court decision"). By discussing the impact of *Merck* above, Plaintiffs believe that *Betz* allows this Court to now deny defendants' motion to dismiss on statute of limitations grounds).

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 29, 2010, I caused the foregoing to be electronically filed with the clerk of the Court. I understand that the Court will provide electronic notification of such filing to the counsel of record in this matter who are registered on the CM/ECF.

*/s/ Michael R. Reese*
Michael Reese